UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Jon Q. Wright and JQ Licensing LLC

                Plaintiffs

                                  Case No: 25-cv-6149

   v.

Thuong Nguyen, T&T Ecom Solution Limited,
and Geeowl LLC

                Defendants.

------------------------------------------------------------x

## PRELIMINARY INJUNCTION ORDER

Plaintiffs Jon Q. Wright and JQ Licensing LLC ("Plaintiffs") previously moved *ex parte* for a temporary restraining order (the "TRO"), which this Court granted on August 5, 2025. Defendants thereafter filed an opposition to Plaintiffs' motion for preliminary injunction [ECF No. 30], and the Court held oral argument on September 2, 2025. Having considered the parties' submissions, the sworn declarations and exhibits, and the arguments presented at the September 2 hearing, the Court now issues this Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, for the reasons stated on the record at the September 2, 2025, hearing and for the findings of fact and conclusions of law set forth below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because Plaintiffs' claims arise under the Copyright Act, 17 U.S.C. § 101 et seq. The Court has personal jurisdiction over Defendants under New York's long-arm statute, C.P.L.R. § 302(a), because Defendants have transacted business in New York and committed tortious acts

causing injury in New York through the operation of commercial websites (the "Websites") that target U.S. consumers, including those in this District. Defendants have purposefully availed themselves of the privilege of conducting business in New York by, among other things, offering for sale and selling infringing products to New York residents, contracting with New York–based service provider DigitalOcean, LLC to host the Websites, and deriving substantial revenue from interstate commerce. The exercise of jurisdiction therefore comports with due process. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the claims occurred in this District and Defendants conduct business in this District through their Websites.

2. A preliminary injunction may issue under Federal Rule of Civil Procedure 65 where the movant demonstrates: (i) a likelihood of success on the merits; (ii) a likelihood of suffering irreparable harm in the absence of preliminary relief; (iii) that the balance of hardships tips in the movant's favor; and (iv) that the injunction is in the public interest. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012).

3. Plaintiff Jon Q. Wright ("Wright") is a professional wildlife illustrator and the sole author of a series of original fish illustrations, including but not limited to depictions of walleye, trout, salmon, bass, crappie, and other species (the "Subject Works"). Plaintiff JQ Licensing LLC ("JQ Licensing") is the exclusive licensing agent and rights holder for Wright's works. Each Subject Work constitutes an original work of authorship fixed in a tangible medium of expression and is protected under the Copyright Act, 17 U.S.C. § 101 et seq. Wright has obtained registrations from the United States Copyright Office for the Subject Works, which are valid and subsisting.

4. Defendants Thuong Nguyen, T&T Ecom Solution Limited, and Geeowl LLC, operate a network of commercial websites (the "Websites") that market and sell consumer goods

such as hats, phone cases, drinkware, and apparel. To drive those sales, Defendants uploaded and incorporated the Subject Works into digital mockups ("Infringing Mockups") that depict consumer products bearing the Subject Works. Upon purchase by consumers, Defendants arranged for the production and distribution of physical merchandise ("Infringing Products") incorporating those same works.

5. Side-by-side comparisons submitted in the Wright Declaration and Supplemental Wright Declaration [ECF Nos. 9 & 35] demonstrate that the respective fish illustrations in Defendants' Infringing Mockups and Infringing Products are not merely "similar" but substantially similar—indeed, in many respects identical—to the Subject Works. The record shows that Defendants appropriated Wright's distinctive expressive choices wholesale, including composition, pose, musculature, proportions, fin positioning, shading, coloring, and anatomical detailing, line for line. Under the well-established "ordinary observer" test, the question is whether "an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002–03 (2d Cir. 1995). Here, the overall impression conveyed by Defendants' works is indistinguishable from Wright's, and any minor differences are overwhelmed by the wholesale appropriation of Wright's protected expression. Courts in this District have emphasized that infringement analysis turns on the total concept and feel of the works, not on counsel's attempt to parse out isolated differences. *Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 528 (S.D.N.Y. 2015). Likewise, cosmetic modifications—such as cropping, adding background textures, or altering the orientation of an image—are legally immaterial and cannot insulate a copier from liability. See *Rogers v. Koons*, 960 F.2d 301, 307–08 (2d Cir. 1992); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993). As Judge Learned Hand observed, "no plagiarist can

excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

6. Even apart from the near-identity of individual features, Wright's works are protectable for the original selection, arrangement, and coordination of artistic elements. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). As set forth in the Supplemental Wright Declaration, Wright made deliberate creative choices in how to angle the fins, exaggerate musculature, sequence color gradations, and position highlights and shadows to convey motion and depth. These artistic judgments are not dictated by biology or the natural appearance of fish, but reflect Wright's individual expression. Courts in this District have recognized that even where a work draws on common or natural elements, the "original selection, organization, and presentation" of those elements is protectable. *CBS Broad., Inc. v. ABC, Inc.*, 2003 U.S. Dist. LEXIS 20258, at *8–9 (S.D.N.Y. Jan. 13, 2003). By copying not just isolated details but Wright's particular arrangement and coordination of those details into dynamic, three-dimensional depictions, Defendants appropriated protectable expression in its entirety. Even if Wright's copyrights were "thin," Defendants' conduct crosses the line because they reproduced the protected combination wholesale. *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272–73 (2d Cir. 2001).

7. In several instances, Defendants intentionally removed or obscured Wright's copyright management information ("CMI"), including his name and copyright notice, from the Subject Works before offering them for sale. The deliberate stripping of CMI is actionable under 17 U.S.C. § 1202 and further underscores the willful nature of Defendants' infringement. Courts in this District have recognized that removal of CMI is "irreconcilable with claims of independent creation" and strongly supports an inference of intentional copying. *Reilly v. Plot Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154, at *24 (S.D.N.Y. Oct. 31, 2016). The

loss of attribution also inflicts irreparable harm by depriving Wright of recognition for his authorship and by undermining his reputation and licensing market—injuries that cannot be measured in damages or remedied after the fact.

8. Defendants have offered no credible evidence of independent creation. Their Opposition asserted, in a single conclusory sentence, that the images were "independently sourced." However, Defendants submitted no declaration, sketches, drafts, or testimony supporting that assertion. The uncontroverted record shows direct appropriation of Plaintiffs' expressive works.

9. Defendants operate anonymously and have demonstrated the ability to quickly create or shift to new websites and accounts for the purpose of advertising and selling infringing products. Unless their existing websites and accounts are disabled, there is a substantial risk that Defendants will continue to disseminate infringing products, causing ongoing injury to Plaintiffs' goodwill, reputation, and licensing market.

10. Courts have broad equitable power to enjoin not only the infringing conduct itself but also the instrumentalities used to facilitate infringement. Given the demonstrated risk of ongoing injury, disabling Defendants' Websites and online accounts is narrowly tailored to prevent ongoing violations because those instrumentalities are the primary means by which the infringement is advertised, effectuated, and monetized, and less restrictive measures have proven ineffective where Defendants can readily relaunch under new domains or storefronts.

11. The record shows that Defendants operate through multiple foreign and online-based payment accounts, making it easy to transfer or conceal assets beyond the reach of this Court. If assets are not frozen, Plaintiffs' right to an equitable accounting and disgorgement of profits under 17 U.S.C. § 504(b) would be rendered meaningless.

12. Plaintiffs have demonstrated that continued infringement will cause irreparable harm. Defendants' use of the Subject Works deprives Plaintiffs of control over their copyrighted works, interferes with licensing opportunities, causes reputational harm, and erodes goodwill. Removal of attribution deprives Wright of recognition for his work, a harm that cannot be measured or compensated in damages.

13. The balance of equities favors Plaintiffs. The only harm to Defendants is the loss of unlawful profits, which is not a cognizable hardship. By contrast, Plaintiffs face significant harm to their business, reputation, and licensing market absent injunctive relief. Plaintiffs do not seek to monopolize the market for fish imagery; they seek only to protect Wright's specific artistic expressions from misappropriation. The public interest also favors an injunction, which protects consumers from deception and ensures that artists' rights are respected and piracy deterred.

14. For all of the foregoing reasons, the Court concludes that Plaintiffs have satisfied each of the requirements for preliminary injunctive relief under Federal Rule of Civil Procedure 65. Plaintiffs have made a clear showing of likelihood of success on the merits, demonstrated irreparable harm absent relief, established that the balance of equities tips decidedly in their favor, and shown that the public interest strongly supports enforcement of their copyrights. Each factor independently supports injunctive relief; together they compel the issuance of a preliminary injunction.

## **ORDER**

Based on the foregoing findings of fact and conclusions of law, Plaintiffs' motion for a preliminary injunction is **GRANTED**. The Temporary Restraining Order previously entered by the Court is hereby converted into, and shall remain in effect as, a Preliminary Injunction until final judgment in this action or further order of the Court, subject to the following terms:

1. As sufficient cause has been shown, Defendants—together with their officers, agents, servants, employees, attorneys, confederates, and all persons acting in active concert or participation with them—are hereby preliminarily enjoined and restrained, pending final judgment in this action or further order of the Court, from engaging in any of the following conduct:

   a. Using the Subject Works, or any reproductions, counterfeit copies, derivatives, or colorable imitations thereof, in any manner, in connection with the distribution, marketing, advertising, offering for sale, or sale of any products, including the Infringing Products or Infringing Mockups;

   b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine product by Plaintiffs and/or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale pursuant to Plaintiffs' copyrights to the Subject Works;

   c. Committing any acts calculated to cause consumers to believe that Defendants' Infringing Products or Infringing Mockups are sold or otherwise marketed under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

   d. Committing any acts to remove CMI from the Subject Works and/or distributing products without Plaintiffs' CMI;

   e. Further infringing Plaintiffs' copyrights to the Subject Works and damaging Plaintiffs' goodwill;

   f. Shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be

sold or offered for sale, and which bear the Subject Works, any reproductions, counterfeit copies, or colorable imitations thereof;

g. Using, linking to, transferring, selling, exercising control over, creating, or otherwise owning or maintaining any website, domain name, or online marketplace account through which Defendants advertise, market, promote, distribute, or sell products bearing the Subject Works or any infringing imitation thereof; and

h. Operating any other online platform, marketplace storefront, or web presence registered, owned, or controlled by Defendants that is used to advertise, market, promote, distribute, or sell Infringing Products or Infringing Mockups, embodying or bearing the Subject Works.

2. Within three business (3) days of receipt of this Order, any domain name registry, web host, content delivery network, e-commerce platform, or other internet service provider (the "Service Providers") providing services to Defendants and/or their Websites are directed to:

a. disable and cease providing services to Defendants and/or the Websites, including any domain name or Website associated with, operated by, controlled by, or otherwise in the possession of the Defendants, such as those set forth in **Appendix A**, hereto:

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products and/or Infringing Mockups; and

c. take all steps necessary to prevent Defendants, and any individual acting in concert with Defendants, from creating new accounts with the Service Providers.

3.   Pursuant to Federal Rules of Civil Procedure 64 and 65, C.P.L.R. § 6201, and the Court's inherent equitable authority to issue provisional remedies ancillary to its authority to provide final equitable relief, Defendants, and all persons acting in active concert or participation with them who receive actual notice of this Order, are hereby preliminarily enjoined from transferring, encumbering, concealing, dissipating, or otherwise disposing of any money, funds, or other assets in their possession, custody, or control, or held on their behalf, until further order of this Court.

4.   Pursuant to Federal Rules of Civil Procedure 64 and 65, C.P.L.R. § 6201, and the Court's inherent equitable authority to issue provisional remedies ancillary to its authority to provide final equitable relief:

   a. Within three business (3) days of receipt of service of this Order, and to the extent they are within the Service Providers' respective custody, possession, or control, the Service Providers shall locate all accounts, monies, funds, domain names, Websites and other assets belonging to, or are associated with Defendants or its employees, agents, contractors, managers, etc., (the "Defendants' Assets") and shall attach, and restrain the transfer or disposing of those assets, domain names, monies, or funds until further ordered by this Court.

   b. Within three (3) business days of receipt of this Order, any bank, payment processor, merchant account provider, credit card association, money transmitter, or other financial institution (collectively, the "Financial Institutions") that has possession, custody, or control of funds or other assets belonging to Defendants, or associated with Defendants' accounts (the "Defendants' Financial Accounts"),

shall locate, identify, and restrain those funds or assets from transfer or disposition until further order of this Court.

c. Within three (3) business days of receipt of this Order, all Financial Institutions shall also disable and cease providing any financial services to Defendants or to Defendants' Websites in connection with the sale of Infringing Products.

5. Upon compliance with the foregoing, each Service Provider and Financial Institution shall provide written confirmation of compliance to Plaintiffs' counsel, identifying the restrained accounts, funds, assets, domain names, or websites associated with Defendants.

6. Within three (3) business days of receipt of service of this Order, the Service Providers and Financial Institutions shall provide the following information to Plaintiffs' counsel (to the extent such information is in the Service Providers' or Financial Institutions' possession, custody, or control):

a. Complete identifying information for Defendants, including but not limited to names, addresses, email addresses, telephone numbers, and any associated account numbers and account balances;

b. A list of all websites, domain names, marketplace storefronts, or online accounts owned, operated, or controlled by Defendants—directly or indirectly, and whether in their own names or through agents, servants, employees, confederates, attorneys, or any other persons acting in concert with them—including any such websites or accounts not listed in Appendix A hereto;

c. A list of all financial accounts owned, operated, or controlled by Defendants, directly or indirectly, or by any persons acting in concert with them, including but not limited to accounts maintained with banks, savings and loan associations,

payment processors, merchant account providers, money transmitters, third-party processors, credit card associations (e.g., MasterCard, VISA, American Express), or online payment systems and platforms such as Amazon, Wish, PayPal, eBay, and Payoneer, together with account numbers, balances, and transactional histories sufficient to identify the movement of funds.

7. Service of this Order upon the Financial Institutions and Service Providers may be effectuated by registered e-mail as these entities are non-parties, and electronic service by registered e-mail is reasonably designed and calculated to advise them of their responsibilities under this Order, particularly given the sophistication of the entities. To the extent that a confirmed e-mail address is not available for any Service Provider or Financial Institution, service of this Order may be effectuated by registered mail or other comparable method of mailing.

8. Plaintiffs shall maintain with the Clerk of Court a bond in the amount of Two Thousand Five Hundred Dollars ($2,500.00), previously posted in connection with the Temporary Restraining Order, as security for the payment of such damages as any party may be entitled to recover in the event this Preliminary Injunction is later determined to have been wrongfully entered. In light of Plaintiffs' clear likelihood of success on the merits, and the absence of any cognizable harm to Defendants beyond the loss of unlawful profits, the Court finds this amount sufficient under Federal Rule of Civil Procedure 65(c) and declines to require additional security at this time.

This Preliminary Injunction shall remain in effect through the final disposition of this action or until further order of the Court.

SO ORDERED

Signed this _3_ day of _September_ 2025

_Loretta A. Preska_
Hon. Loretta A. Preska

**APPENDIX A**

1. www.Kalliegear.com
2. www.Geeowl.com
3. www.coutureflair.com
4. www.Jessiearts.com
5. www.JeremyArts.com
6. www.Fashionartaz.com